Morning, I'm David Cook and I represent Deborah D. Peterson and we're here on an appeal from Judge White rejecting the recommendation of Magistrate Judge Zimmerman on an order for assignment of rights. This is an interesting appeal. It raises lots of issues here and I'd like to address probably the key issue. What was raised by adverse counsel and indirectly or directly by Judge White was whether or not I can get an assignment out of a United States Court and what that means. And the position I'm going to summarize by Judge White is well that's an act of enforcement in the United States Court of a non-U.S. cited asset and under 1610A, which we're subject to, I have three requirements if I want to use the U.S. court. Yes, it's got to be here. It's got to be used for commercial purpose by the foreign state. I mean, that's APCAP by this court in 2007 said exactly that. No, no, I should say no mystery to that. We all know that. So our position has been saying, okay, I, we, we get that. And we read Richmark. Richmark says that a district court is authorized to permit enforcement against a foreign state. That's true. In that case, it was post-judgment inrogatories. So when we pour the two together, our view is I can get a 708.510, which is the California State Assignment Order. We call them pay me orders. Pay, not me personally, but pay the, pay the plaintiff, not the, the judgment debtor. So we say, okay, what I'd like is for my district court judge, you know, large, large picture, order the assignment of this non-U.S. cited receivable to plaintiff. Okay? When we stop there, people start waving hands and say, you can't do that. That's an enforcement. We say no. The enforcement of that does not arise from the fact of the assignment. The assignment itself is a neutral act. The enforcement is when I turn to the obligor, whoever that obligor might be, and say, pay me, you know, make the demand. Now, there's kind of two pieces in this case. One piece is we take the non-U.S. cited asset. Okay, I'm going to live with 1610A. That's the law. So I'm going to take my assignment order, go to wherever I find my obligor, which both argue or say here, is a non-U.S. court, and seek to enforce it. That's what Richmark says. Richmark says you can get from a U.S. court, and as we call it, a confiscatory discovery order, even if the subject matter of the confiscatory, which I'll get to in a second, discovery order seeks to discover immune assets. Well, okay. We are, again, I have two pieces here. So they're immune. That is a non-U.S. cited asset. That's what we're seeking here. And, you know, one would say, have I taken Richmark one step too far? And the answer is, no, I have not followed Richmark one step too far, because my enforcement isn't here. The fallback, the step-back position here is the following, is Magistrate Judge Zimmerman obviously eyeballed this problem. The court in Choudian, which is obviously the California, you know, incarnation of this issue, they said, okay, you're not going to get an airplane and go to Marseilles, France, and go chase this down. So our fallback position is, is I'm entitled to an assignment order as long as this Judge Magistrate Zimmerman said I can find the asset here that is subject to 1610a. So I have a, we call that Choudian fallback position. The other, again, large, large issue is Judge, Judge White said, you know, I'm obligated to serve my post-judgment process in accordance with 1608b1 through 4, which is translating everything in, in this case, Farsi, as the case may be, serving in a fairly gradated order, sending a copy of the Foreign Sovereign Immunities Act and its updated version in Farsi, nonetheless. And we cited Auto Tech, we cited Rubin, and we said, no, I don't. I don't have to serve Iran or whoever my judgment debtor might be according, in accordance with 1603, 1608b1 through 3. I can serve it in accordance with local law. Clearly, the drafters of FSIA could have compelled us, as a judgment creditor, to continue to use 1608 at the service of some complaint and then carry that through to post-judgment process. The next item is what we call the gatekeeper orders. 1610c says that in a default judgment setting, that the judgment creditor has to give the last clear chance. Final warning. How's that? Notify the foreign state, there's this case, fairly large judgment, and give an adequate period of time. The, the, we call it the best case, or the most demonstrative case, is Ned, I think it's Ned Trucking by Chief Judge Lamberth, who has a very good decision. And he goes through and he says, I don't know about tongue-in-cheek, he says, yeah, you got to give these guys ample notice. And he says, and some governments are more organized than others, indicating that some governments when they get hit with a large judgment, need the opportunity to evaluate. They may not be familiar with U.S. law. Okay? We have a 1610c order. The United States in Sammika's brief suggested we don't. We do have a 1610c order. But the Fifth Circuit, in the holstering of what we call the Congo cases, they're cited by CMA, CGM, say, no, you have to go more than give your foreign state that last clear final warning. You have to bring your enforcement down to your district court judge and basically have a enforcement hearing. What property do you seek to enforce? Does that specific property comply with FSIA? Right? And, in fact, have a hearing. I didn't see that 1610c, but I'm thinking, gee, I'm going to have a hearing on a bank account. I found, let's say we're lucky enough to find somebody's bank account and go down to court and say, Judge, I want to seize the bank account and notify the other side I found your bank account. I don't think that bank account is going to sit around for much, in this day and age, a nanosecond, as much as it is to wire it out, maybe a microsecond. So we take issue with the requirement of what we call the pre-seizure hearing, as indicated by the long line of the Fifth Circuit in the Congo cases here. The peripheral matter, which at peripheral, is whether or not CMA, CGM is properly here. We say they're not here. They don't have to be here. They don't have a voice. If under, even though I'm in district court here, and obviously district court, in post-judgement matters, I'm, I can avail myself of State court rights and remedies in an obligor, in an assignment setting, as no standing. That's not the way the statute works. Otherwise, I'd be in State court and I'd be having trials, any trial, with every obligor before I get my assignment order, and that's not the way the statute works. And that would be even more bizarre, because some of these obligors would have oodles of defenses, like jurisdiction venue, arbitrary you know, typical standard defenses between the obligor and the judgment debtor. What the Court also may find, or the, as you'll hear from the United States Supreme Court in the United States, is whether or not the rights and defenses under the Foreign Sovereign Immunities Act, particularly to enforcement, is an affirmative defense, which must be raised by the foreign state. And Judge Zimmerman, following Judge Manning out of the Northern District of Illinois, said no, that foreign state must appear. And Judge White rejected that and said, no, it's jurisdictional. The district court judge is obligated to determine whether or not the foreign state appears or doesn't appear. In this Court, we have the Wilmington case, which was an admiralty case of which the statement by the Court says, well, the government of Finland hasn't showed up, one of their entities hasn't showed up, therefore we're good to go. In Judge Manning's case, which is the Cuneiform Antiquities case, she likewise said, no, that matters on appeal before the Seventh Circuit, which is a late appeal, but still on appeal. And we argue that, as Judge Zimmerman suggested, Magistrate Judge Zimmerman, let's see whether they show up and appear. Our view is, let Iran show up. If Iran has a defense to this, let them come into court, as they've done in the Antiquities case in Northern Chicago, you know, the Rubin case, and let them make out their case. Any other? I think I've laid everything out. Any further? I think we have your argument in hand and that you have plenty of time for rebuttal. And I'm sure you will want to emphasize that. I think it's going to come on rebuttal here. Thank you. Before we start, do you have a time agreement on time allocation? We've given it to him. Oh, that's true. Yeah. We did, we did. That's right. Good morning. My name is Peter Buscemi. I'm here on behalf of CMACGM. I'd like to make just a few points. First. Hold on just one second. I think we've got to readjust the time here. He has 10 minutes. Okay. Yes, sir. 20 altogether. He gets 10 of it. First, this case comes to California because of a California state statute that permits assignments in enforcement of judgments. And so counsel for plaintiffs initiates a new action here in California in an effort to take advantage of that state statute, 708.510, which we've talked about in the briefs. But there's no suggestion, nor could there be, that the state statute can trump the enforcement actions or suits in general against foreign sovereigns. Is there anything in it that prohibits assignment? The Foreign Sovereign Immunities Act sets forth the terms and conditions on which any execution or enforcement action may take place, including assignments. There's no, to answer your question directly, there's no prohibition in the Foreign Sovereign Immunities Act on assignment. If you can satisfy the requirements of the statute, I would assume that assignment would be no different from any other enforcement mechanism. But that's not what we have here. We have an acknowledgment by plaintiffs that the Foreign Sovereign Immunities Act in Section 1610A limits enforcement to property that is in the United States and that has been used for commercial activity in the United States. We have no dispute about that. But, and we further have an acknowledgment now, although we didn't at the outset, but we do now, that there is no such property in the United States, and there's certainly no such property that's been used for commercial activity in the United States. Nevertheless, plaintiffs say we're entitled to get sort of an assignment in the sky, just a assignment that goes to any property that may be, or any debt or any obligation that may be owed to Iran by our clients or any of the other shipping, 14 shipping lines as to whom motions were made in the district court or any of the financial institutions as to whom motions were made in the district court. And no showing that any such properties in the United States or any such property has been used for commercial activity in the United States is needed. Why? Because there's this California statute, 708.510, but that statute cannot alter the requirements of the Foreign Sovereign Immunities Act. And so, as Judge White correctly held, since there is no such property, there's nothing to be assigned, there's nothing to be attached, there's nothing on which any form of execution or enforcement can be performed. The second point that I want to make is that the suggestion that a court confronted with one of these enforcement actions, whether for an assignment or any other execution method, need not consider foreign sovereign immunity unless and until the foreign sovereign itself shows up, is simply not supported by the case law. The Supreme Court in the Verlinden case, the Seventh Circuit in the Frilova case, the Fifth Circuit in the FG Hemisphere case, the Fifth Circuit again in the Walker International Holdings, the Southern District of New York in the Wininger against Castro case. There are a whole series of cases that we've cited and that the Federal Government has cited that make the point that because of the nature of the Foreign Sovereign comes in to claim immunity. And the government makes the point, which I think is correct, that the waiver provision in Section 1610a1 really wouldn't make any sense if, when the foreign sovereign doesn't appear, that's the end of the matter, because the statute provides what needs to be done in order to effect a waiver, that the court can find a waiver only  in the circumstances set forth in 1610a1, and the foreign sovereign's mere absence is not sufficient to satisfy that. Now, against all of that, our opponents say, well, we have the Richmar case. And the Richmar case from this Court in 1992 involved not a foreign state, but a commercial entity that was affiliated with the People's Republic of China, was an instrumentality of a foreign state, but engaged in commercial activity in the United States. And it involved not a judgment enforcement. It involved a discovery dispute. There was no assignment. There was no attempt to reach property, to enter an order that would reach property abroad. As far as we can tell from this Court's opinion, the defendant did not even invoke sovereign immunity as a defense to the discovery requests that were served or on the contempt sanctions that were imposed when those discovery requests were not answered. So we think that Richmar is very different from this case, and that the Court need not revisit Richmar or the issues decided there in order to address the issues here. Counsel, let me ask you a question. If I were to buy your argument that there is nothing that can happen if there's no property in the United States, is that argument contingent on me also suggesting that the right to get at this property is jurisdictional? I don't think so, Your Honor, although many of the cases do talk in terms of jurisdiction, and the Supreme Court has said that the only source of subject matter jurisdiction over a foreign sovereign is the Foreign Sovereign Immunities Act. And they've not said that. They have not said jurisdiction is appropriate under the Foreign Sovereign Immunities Act, but they only reference code sections that have nothing to do with this particular case. That's correct, Your Honor. And so, therefore, I guess my big question is, if, in fact, I can buy your argument as the one I bought, if, in fact, I can buy your argument the property has to be there, do I have to suggest that the statutes upon which I am now making this judgment are jurisdictional in nature? I don't think you need to go that far. The argument, I think you could say that with respect to the original application, the jurisdiction in the district court to consider the application arises from the filing in this jurisdiction of the certified copy of the judgment from the District of Columbia. So you could say that because there is an existing judgment and because that judgment is brought here to this jurisdiction, filed in this jurisdiction, the court is imbued with jurisdiction to consider the application, whatever it may be. And then the question of the propriety of the application and whether it's substantively proper or not is governed by the Foreign Sovereign Immunities Act, whether or not you call that jurisdiction. But I think the reason that the word jurisdiction gets thrown around kind of loosely in some of these cases is because typically in an action that deals with property, whether it's real property or some physical property or some inchoate obligation of some kind, the court's authority arises from the presence in the jurisdiction of that property. And so I think that that historical fact as a common law argument makes it such that the jurisdiction is the thing we start talking about. But that was, I mean, if in fact I have to find that it's jurisdictional, then it seems to me your argument is tougher. Then I might have to go to California law, really. If in fact it isn't a jurisdiction, if in fact I've got to find your particular code section a jurisdictional code section and I can't find it, then it seems to me if we apply, California law would apply, wouldn't it? Well, I don't know whether California, in light, if we, if we, if I accept the proposition, which I don't think is right, but if for the sake of argument we accept the proposition that we have to call this jurisdictional, I would still say that in light of the Supreme Court's holdings that the only source of jurisdiction with regard to the foreign sovereign is the FSIA, that there can't be other state law sources of jurisdiction over foreign sovereigns. But as I say, I think that's... But we're not really talking about the foreign sovereign at that point. We're talking about property, aren't we? Well, yes, we are, but I think that the property of the foreign sovereign has also been historically immune. So, but again, I don't think that we need to, this is sort of like an academic discussion of whether the word jurisdiction is appropriately used to describe this, and I don't think we need to go there because I don't, I think that the foreign sovereign immunities act limits the applicability of any judgment execution remedies to property in the United States used for commercial activity in the United States. And that would be true whether Iran was standing right here or whether Iran is altogether absent. Any further questions? Okay. Thank you, counsel. Thank you. Your Honor, Sharon Swingle from the Department of Justice, and I want to thank the Court for allowing me to be here today to represent the interests of the United States as amicus curiae. Obviously, these interests are implicated by a case involving principles of foreign sovereign immunity, both because the enforcement of judgments against foreign state can influence and affect our foreign relations with those in other states, and also because they can affect the treatment of the United States government in foreign litigation and courts abroad. Beginning first with your question, Judge Smith, in the view of the United States, the executional immunity here does not have any bearing on the court's subject matter jurisdiction, and as you can see, that is not an argument we have made. Once the FSIA provides a basis for the exercise of subject matter jurisdiction over a foreign state, because an exception to immunity applies under 1605, the court also has personal jurisdiction over the foreign state. The FSIA essentially abolishes in rem jurisdiction over foreign state properties, and then under 28 U.S.C. 1963, a judgment creditor can then register that judgment in other district courts. So the issues here do not affect the court's subject matter jurisdiction. I think, though, that as my counsel pointed out, and as, for example, Judge Wood writing for the panel on Auto Tech recognized, the executional immunity provisions really delimit the scope of a Federal court's authority to act against foreign state property. And so although they are not jurisdictional, they certainly do circumscribe the ability of a court to embrace order, allow coercive measures against foreign state property. And I think they do so in a number of ways. First, I think the plain language of the statute is clear, that there is a presumption of immunity of foreign state property. And in that sense, I think the standing argument here really cannot be squared with that presumption of immunity. They set out a provision for the forfeiture or waiver of executional immunity, and courts have uniformly required more than a simple failure to appear by a foreign state. I think also to understand foreign state immunity as something that can be invoked only by an appearing foreign state would really give quite short shrift to the interests of the United States government here in ensuring that its courts are not used as a mechanism of taking action against foreign state property that would be inconsistent with our treaty obligations and potentially with customary international law. Turning to the assignment order, I think it is clear both from the pleadings in the district court and really from the arguments in the plaintiff's briefs here that what they seek is an order that cannot be squared with the restrictions on immunity and executional immunity that are set out in the FSIA. Now, they've treated the assignment they seek as something that is somehow inchoate or that has no real force, but I think their pleadings in the district court are clear. What they will then ask for is an order from the court, should Iran fail to comply with the assignment order, that would essentially appoint, for example, a court clerk or some third party to make the assignment that they seek, and then with that order they would go directly to the asset holder and seek to enforce it. I think at JA 170 in their brief, they set out this procedural set of steps that they envisioned happening. So I think for all practical purposes here, what they seek really is an execution order, and it's an order that is against assets that they acknowledge could not be acted directly on under the FSIA. I think when something really is the functional equivalent of assignment, it just cannot be squared with those limitations in the statute. Counsel, are there any cases that directly hold that the immunity has to be raised by an affirmative defense or that you don't have to raise it that way? Well, certainly the Fifth Circuit has called irrelevant the standing argument. The D.C. Circuit on the F.G. Hemisphere's case recognized that immunity can be considered even where a foreign state has not come in. As far as I'm aware, one of the very few cases to have actually accepted this notion that it's an affirmative defense is the district court in the Rubin litigation. That case is now on appeal before the Seventh Circuit. Mr. Cook and I had the privilege of arguing before the panel just a matter of weeks ago, and the United States is urging reversal of that district court judgment. I just think it is not consistent with so many different aspects of the statute. And I would say that as a backdrop, you know, in our view, the statute requires a court to consider sua sponte where the property is immune, but at the very least it would be required to do so where the United States government or secondarily an asset holder had raised immunity on the State's behalf. And I would note that the United States government is often sued in foreign courts in instances in which we feel we haven't been properly sued. We may choose not to appear, and we do rely on asset holders or the foreign courts themselves to consider our claims of immunity, and we certainly have a great interest in having that be the rule on these courts as well. However, it is true, is it not, that if you look very closely at Verlinden, Verlinden really gives pretty good evidence that as we're looking at 1330A, there's no question that the FSIA is jurisdictional as it relates to sections 1605 through 1607, because they're laid out in 1330A. Right. However, we don't have the sections that we have right now in front of us in 1330A. And if, in fact, we don't have those, in general, if I look at my rules of civil procedure, I would not have any way to raise this immunity that you are suggesting except by raising it as an affirmative defense. And, in fact, we've held that to be the case many times. Well, Your Honor. As it relates to Eleventh Amendment immunity, as it relates to qualified immunity, as it relates to absolute immunity, they're all affirmative defenses. I think certainly, Your Honor, there may be some initial requirement of something before the Court that puts at issue the nature of the assets. And it may well be that, for example, in the Wilmington Trust case, where there was nothing before the Court in the form of the pleadings or the evidence submitted that would bring to bear the FSIA that would be a basis for the Court to conclude that immunity might apply, for example. There may be some initial onus on a litigant to raise immunity as an issue in the case. But I think where property is concededly State property or concededly the property of a foreign government, then I think the presumption of immunity under the FSIA comes into force. And I think, for example, the statutory presumption of immunity really distinguishes some of the other circumstances where you're not operating under a statutory scheme that sets a default from which the Court needs to find an exception. And I would look, too, to the historic backdrop against which the FSIA was enacted in which no coercive measures could be taken against foreign State property. And courts would, sua sponte, consider, for example, in the case of NREM jurisdiction, where the immunity claim was being made on the part of property, and that would be the basis for attachment, whether that State property could be acted against under the restrictive theory of immunity that was enforced pre-FSIA. And that was something done by courts either at the suggestion of the Department of State, if it participated in a particular case, or against background principles of immunity if the government hadn't come in. Well, I guess my worry is that in those cases where no one was in there suggesting it, it seemed to see, and here's the case, whether the State, whether the court itself not the State, but the court itself should say, it's one of those questions under rules of civil procedure that we've got to suggest ourselves. That's the worry. If it's jurisdictional, we have no trouble getting into it. If it's something that has to do with that, we have no trouble. It's always something on our plate. But if it isn't as to jurisdiction itself, it's to be raised by some party there as an affirmative defense. We have no right into that. Well, Your Honor, with respect, I think when the court is being asked to lend its coercive authority to actions against property that belongs to a foreign State, and as the Court is aware, it must, there must be a court order for that to happen. But what's the principal difference between that and coercive action against, say, a State, an individual State in the United States or a tribe, both of which enjoy sovereign immunity? Well, that's the interest in, obviously, the rule against either of those entities is you have to raise immunity. Well, and that takes place, and enforcement actions take place under different sets of statutory means, different means in which various defenses can be raised. Obviously, you know, the waiver of sovereign immunity against the United States is quite limited, and you can act against the United States government's property only in special fora and under special rules. So I don't think it is unusual for there to be a requirement that the Court consider it without some third-party reasoning. It's not anyone raising the issue. Exactly. And, of course, it's not. I don't know. It's a, it is sort of a novel issue. If it's not jurisdictional, then one, then it ought to be an affirmative defense, and whether or not someone else is entitled to raise it may be a different matter, but when it's not raised at all. And in any event, Your Honor, it was obviously raised here by the asset holder and is being invoked as well by the United States government. So this is not a case in which it was waived in its entirety or the Court was not aware of the possibility of immunity coming into force. If I could just be brief. Now, you would agree that the United States has no ability to waive a sovereign immunity on behalf of a foreign country? Under the FSIA, that is correct, Your Honor. Yeah. So how can it assert sovereign immunity? Well, you know, obviously the United States does in some instances assert we don't have any means by which to obtain automatic notification of claims against foreign States. So I certainly wouldn't want to endorse a rule under which unless the United States government came in, immunity shouldn't be applied by the Court. But obviously, we do have treaty obligations that come into force as well. The FG Hemisphere case, for example, involved efforts to act against diplomatic and consular property, which we are obliged by treaty to protect against enforcement mechanisms. If I could just speak very briefly, I know my time is up, to this 1610C gatekeeper order that the Peterson plaintiffs have relied on. I would embrace or ask this Court not to give any binding force or effect to that. I think it is similar to the district court order that the Fifth Circuit looked at in the Connecticut Bank case. It made no determination as to the susceptibility to enforcement of any foreign State property. And in fact, it's not at all clear what legal standards the district court was applying, but certainly there's no finding or holding that would be binding on this Court. If this Court has no questions, I would ask it to affirm. Roberts. Thank you, counsel. Mr. Cook. Let me address, we're not making any concession one way or another whether a property is here or not here. In about a month ago What's your best argument that it's here? What? What's your best argument that it's here? Well, there are two types of property. There is property which is not the subject matter of this proceeding, which sits in the Southern District of New York. So there is property of Iran in the United States, but not the subject of this battle here. So I want to avoid making it into that. What? We're not necessarily into that. We're in the California area. We're dealing with California. We're just dealing with California and the subject matter of this precise motion dealing with shipping companies and as described in this motion. And we make no concession one way or another. Based upon the facts of this narrow motion, CMACGM says that we have nothing here. Payments are made out of Marseilles to presumably somewhere in Iran or wire transferred. So taking the facts as I have them here, it would, as it would appear, that's where the property is located. We haven't got into the issue whether or not CMACGM is here for all purposes here and that type of discussion. Since the matter didn't get passed, didn't get into discovery, we have not broached that issue. But again, taking the facts as I have them here. But really, you have to concede that the property at issue right in this proceeding is not in the United States. As the record states. Right. And I don't want to, because there may be other obligors and other facts and other permutations, and we've yet to get that. But it would be different if they had a bank account, for example, here from which they were going to wire the money. That would be an argument. That would be an argument. Or whether or not. Or whether or not they're a partyholder of a contract. Or CMACGM, I'm sorry, CMACGM might be here for all purposes. We don't know, but based upon the limited facts here. So I don't want to get into, I'm not conceding anything. I'm just, you know, playing cards. You're dealt with business here. The other issue which as to the United States is 1610C says what it says. Got to get final notice and there you go. The best argument saying no, we do not need to litigate specific property is within the scope of 1610C. Congress could have said before you seek to reach A to find property, one needs to go to the district court judge and get an order authorizing enforcement as that specific property. Congress did not demand that. And from their point of view, after the foreign State gets last chance, say politely, it's open season. Whatever we can find, we can find. Under 1606, a foreign State is treated as if it was any other judgment debtor. And under California law or any State, it's do your best to collect this judgment. There is something important here which would hopefully persuade the Court that, first of all, enforcement is not jurisdictional, that sovereign immunity is an affirmative offense. The bulk, if not all, of these cases against Iran, probably to the T, Iran has defaulted. This is a default judgment. One could, although it's not in the record, just presume I'm correct, the vast amount if not all of them are defaults. And Iran's position has been, obviously, I don't care. How's that? You can get all these big default judgments? It's sort of like, come get me. And what Judge Manning has done, and in fact what we're asking is, okay, if that's what we have with Iran, then I'm authorized to seize their asset. And if that prompts them to come into court, then there's some justice in that process. Because ultimately, that's what Iran has done by, you know, drawing a line in the sand business or throwing down the gauntlet, said, come get me. And we beseech this Court to authorize enforcement no matter how difficult it might be, because, in effect, that's what Iran has invited here. I do have a fallback position. And if the Court says we're going to evaluate this under State law, in Chudian, which is, I hope I pronounced that correctly, Chudian, the Court of Appeals said, well, we don't want you running off to the Philippines and collecting, but kept for the Chudian judgment creditor an assignment order for assets of the within the United States, so that order was preserved in part. So that would be my consolation prize for whatever that would be, whatever that would be in this case. We disagree respectfully with the United States on a gatekeeper order. What the United States would suggest is that we are obligated to, again, litigate specific assets before the court. We don't think FSI says that. We don't think it's a process procedure. It's certainly not required under California law. And, in fact, that would create an endless, endless litigation over specific assets, which then we'd be on appeal, and we'd never reach the asset. Thank you very much. Bless the Court. Thank you for your arguments. Thank you. It's a case, and we appreciate your presentations and your briefs. And the case should, I argue, be under submission. Thank you. That will be an adjournment for the morning. Thank you.
judges: Fletcher B. , Thomas, Smith N. R.